J-S17029-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: I.M.E.R., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.R., NATURAL MOTHER, | |
| Appellant | No. 1891 WDA 2014 |

Appeal from the Decree Entered October 9, 2014
In the Court of Common Pleas of Blair County
Civil Division at No(s): 2014 AD 44

BEFORE:  GANTMAN, P.J., SHOGAN, and FITZGERALD,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED APRIL 23, 2015**

J.R. ("Mother") appeals from the decree dated October 7, 2014, and entered on October 9, 2014, that granted the petition filed by Blair County Children Youth and Families ("BCCYF" or "the Agency"), seeking to involuntarily terminate Mother's parental rights to I.M.E.R. ("Child"), who was born in November of 2013, pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), and (b), and changed Child's permanency goal to adoption with respect to Mother, pursuant to 42 Pa.C.S. § 6351(f).[1]  We affirm.

_____

[*]  Former Justice specially assigned to the Superior Court.

[1]  On October 9, 2014, the trial court entered a decree voluntarily terminating M.P.'s (Father) parental rights to Child, confirming his voluntary relinquishment of his parental rights at the hearing on September 30, 2014. *(Footnote Continued Next Page)*

J-S17029-15

The trial court summarized the relevant factual and procedural history of this case as follows:

> The subject child, I.M.E.R., was born [in November of 2013]. His mother is the Appellant, J.R., while his father is M.P. This matter involves dependency proceedings filed to Blair County Docket No. CP-7-DP-121-2013. Those dependency proceedings were incorporated into the record at the time of our combined 6th/12th Month Review/TPR hearing held September 30, 2014.
>
> Blair County Children, Youth & Families (hereinafter BCCYF) first became involved with this child and [his] parents [in November of 2013,] when the Agency received a call from UPMC Altoona stating [Mother] had just delivered a baby, and the staff was concerned due to [Mother's] extremely limited cognitive abilities and mental health history. The hospital staff expressed additional concerns, including [Mother's] self-report of being a victim of domestic abuse at the hands of the father.
>
> BCCYF acquired emergency custody of the child on November 8, 2013. [Child] was initially placed in the emergency kinship care of [Child's] maternal great[-]aunt ["E.M.";] however, she could not be approved for kinship care due to a prior criminal conviction in 2004 for possession of non-prescribed pills.
>
> The adjudicatory hearing was originally scheduled for November 22, 2013[;] however, it was continued and ultimately held January 8, 2014. On that date, [Child] was adjudicated dependent and remained in foster care placement. No appropriate family resources were identified by the parents.
>
> [Mother] was directed to undergo a psychological evaluation for the purpose of a global assessment to determine her parenting ability. The father was recommended to partake in Family Drug Court and to undergo a drug and alcohol assessment. Both parents were ordered to cooperate with

_(Footnote Continued)_ _____

Father did not file a notice of appeal from the decree terminating his parental rights, nor is he a party to the instant appeal.

- 2 -

reunification services. [Order of Adjudication and Disposition, 1/8/14].

The 6th Month Permanency Review hearing was scheduled for April 30, 2014[;] however, the Agency opted to move the matter to court due to its concerns regarding the lack of progress made by either parent. The matter was rescheduled for June 17, 2014. BCCYF advised the parties it would be seeking a goal change to adoption.

Permanency Review Hearings were held on June 17, 2014 (6th Month Review) and September 30, 2014 (combined 6th Month/12th Month Review). BCCYF's Petition to Terminate Parental Rights was combined with the CYF Permanency Review Hearing held September 30, 2014.

Trial Court Opinion, 11/19/14, at 1-2.

At the six-month permanency review hearing on June 17, 2014, BCCYF presented the testimony of Nicole Weyant, a parent-educator with Family in Crisis Services ("FICS") in Blair County, Pennsylvania. N.T., 6/17/14, at 4. BCCYF also presented the testimony, *via* telephone, of Marolyn Morford, Ph.D., a licensed psychologist who conducted a psychological evaluation of Mother, and who testified as an expert witness. *Id*. at 13-15.

At the permanency review hearing and termination hearing on September 30, 2014, BCCYF presented the testimony of Dr. Morford *via* telephone. N.T., 9/30/14, at 8. BCCYF also presented the testimony of Shannon Cameron, a reunification worker with Kids First, in Altoona, Pennsylvania, who was Mother's reunification worker. *Id*. at 40. Next, BCCYF presented the testimony of Julie Nardozza, an employee of the Home Nursing Agency in Altoona, Pennsylvania, who has provided Children's

Blended Case Management Services for Mother since July of 2012. *Id*. at 90. BCCYF then presented the testimony of Jodie Feath, the Support Coordinator Supervisor for North Star Services, Inc., in Altoona, Pennsylvania, who serves as Mother's Support Coordinator. *Id*. at 108-109. Finally, BCCYF presented the testimony of Ashley Gehrdes, BCCYF Casework Supervisor assigned to Mother's case since December of 2013. *Id*. at 119. Mother testified on her own behalf, and presented the testimony of her aunt, E.M., with whom Mother resides. *Id*. at 140-141, 173-174.

On October 9, 2014, the trial court entered the decree involuntarily terminating Mother's parental rights. On November 6, 2014, Mother timely filed a notice of appeal along with a concise statement pursuant to Pa.R.A.P. 1925.

Mother raises the following issue for our review:

A. Whether or not the trial court erred in terminating Mother's parental rights to her child?

Mother's Brief at 6.[2]

Mother argues that the trial court erred in terminating her parental rights because Child had not been in placement for fifteen out of twenty-two

---

[2] In her concise statement of errors complained of on appeal and her statement of questions involved in her brief, Mother has not raised the issue of the change of Child's permanency goal to adoption. Therefore, Mother waived any challenge to the goal change. *See Krebs v. United Refining Company of Pennsylvania*, 893 A.2d 776, 797 (Pa. Super. 2006) (stating that any issue not set forth in or suggested by an appellate brief's statement of questions involved and concise statement is deemed waived).

months, the Agency failed to provide services at the frequency or duration that the Agency's own expert, Dr. Morford, opined would be necessary to accomplish reunification with Mother, and Mother had her aunt, E.M., as an appropriate support system. Mother's Brief at 8. Mother requests this Court to reverse the trial court's determination and remand the matter directing reunification between Mother and Child.

We review an appeal from the termination of parental rights in accordance with the following standard set forth by our Supreme Court:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.
>
> As we discussed in [*In re: R.J.T.*, 9 A.3d 1179 (Pa. 2010)], there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are

- 5 -

supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 47 A.3d 817, 826-827 (Pa. 2012) (some citations omitted).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). Moreover, we have explained:

> [t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*Id*. (quoting *In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, the trial court terminated Mother's parental rights under 23 Pa.C.S. § 2511(a)(1), (2), (5), and (b). We will focus upon sections 2511(a)(2) and (b), which provide as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

* * *

    (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be

without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (b).

To satisfy the requirements of section 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. *In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003). In addition, the grounds for termination of parental rights under section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary those grounds may include acts of refusal as well as incapacity to

perform parental duties. *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002).

Our Supreme Court set forth our inquiry under section 2511(a)(2) as follows:

> As stated above, § 2511(a)(2) provides statutory grounds for termination of parental rights where it is demonstrated by clear and convincing evidence that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." If and only if grounds for termination are established under subsection (a), does a court consider "the developmental, physical and emotional needs and welfare of the child" under § 2511(b).
>
> This Court has addressed incapacity sufficient for termination under § 2511(a)(2):
>
>> A decision to terminate parental rights, never to be made lightly or without a sense of compassion for the parent, can seldom be more difficult than when termination is based upon parental incapacity. The legislature, however, in enacting the 1970 Adoption Act, concluded that a parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties.
>
> *In re Adoption of J.J.*, 511 Pa. 590, 515 A.2d 883, 891 (Pa. 1986) (*quoting In re: William L.*, 477 Pa. 322, 383 A.2d 1228, 1239 (Pa. 1978)).

*Adoption of S.P.*, 47 A.3d at 827.

This Court has stated that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *In re A.L.D.*, 797 A.2d at 337. A parent's vow to cooperate, after a long

period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *Id*. at 340.

After a careful review of the certified record, we conclude that the trial court aptly discussed the evidence pertaining to the requirements of section 2511(a)(2). The trial court explained its decision to terminate Mother's parental rights and change Child's permanency goal to adoption as follows:

> We found that there had been <u>minimal</u> compliance with the permanency plan, in that:
>
> The mother has not invested in services and has not demonstrated any ability to safely parent this very young, 11-month old, child. Because of her cognitive limitations, and her refusal/inability to implement the safety techniques she has been taught, the child would be at serious risk if placed in her custody. The mother has no other appropriate resources who could constantly be with her to help her care for the child, which is what would be necessary. The mother has not demonstrated any ability to remedy the circumstances which led to placement, nor is there any indication that she could remedy such circumstances in the foreseeable future even with continued services in place.
>
> BCCYF has attempted reunification services on two separate occasions, first with FICS, and then after the mother complained about the FICS representatives, with New Steps. Both FICS (Nicole Weyant) and New Steps (Shannon Cameron) were consistent in their testimony that the mother would become very frustrated and angry when the representatives tried to teach her basic parenting skills such as changing a diaper, feeding the baby, dressing the baby, holding the baby, transferring the child in and out of a car seat, etc. The mother made very little, if any, progress in demonstrating she could provide these basic parenting skills. The representatives of both agencies testified that there was a lack of eye connection and interaction from [Child] toward his mother, and that there did not appear to be any apparent

bond between the two. The visits always remained supervised, and in fact, New Steps decreased the visits from 2 hours to 1 hour because of the obvious distress the child often demonstrated when with his mother. There was a delay in implementation of services by New Steps because of the difficulty in making contact with the mother. Because of her frustration with the service providers, the mother didn't attend any scheduled visits with the child since 8/28/14, nor [sic] any practice sessions where parenting skills were being taught since 9/6/14. Shannon Cameron of New Steps testified that they tried to implement the recommendations of Dr. Marilyn [sic] Morford, who performed a psychological evaluation on the mother (her report being BCCYF Exhibit 1, 6/17/14). The mother was consistently unable to retain basic parenting skills. Ms. Cameron testified that she could not assure that the child would be safe in the mother's care for any length of time, even for one minute.

Both Julie Nardozza, the Blended Case Manager from Home Nursing Agency, and Jodie Feath, of North Star Services, testified as to their respective agency's involvement with the mother. Ms. Nardozza assists the mother in areas such as medication management, housing, employment and education. The mother suffers from a diagnoses of mood disorder, adjustment disorder with anxiety, and depression. She is prescribed medications. As the service providers from FICS and New Steps testified, it was difficult to assist the mother [as] she refused to acknowledge the need and/or refused to accept such services. Ms. Nardozza consistently recommended the mother to seek individual counseling for her mental health needs. The mother has scheduled a session with an individual therapist on 10/17/14. Because of missed appointments, the mother has not been able to obtain a primary care physician. Without a PCP [Primary Care Provider], the mother was unable to get a referral for the neuropsychological evaluation and occupational therapy assessment that were recommended by Dr. Morford. The mother did complete her community service hours, she receives social security disability benefits in the approximate amount of $700 per month, she currently is residing with her aunt, E.M., who

is a source of support for her, and she has separated from the child's father, M.P., which all service providers indicate is a "positive" in her life. There remains a worry as to whom she may involve herself in a relationship, as her judgment in the past has been an area of concern. See ¶ 3(a) of Permanency Review Order of 10/7/14.

Dr. Morford testified that the mother suffered from two separate areas that hinder her ability to parent. First, her cognitive developmental deficit impairs her ability to understand proper and safe parenting; and the second is an obvious neurological impairment, which impedes her physical ability to safely [c]are for the child.

It is important to note that during the June 17, [2]014 hearing, Dr. Morford testified that even in the "best case" scenario, where the mother would cooperate with service providers and have a stable support system, that [sic] it would still take years before she would have the ability to provide a safe, stable and secure environment for this young child on her own. More specifically, the child would have to be at least school age if this were to ever occur. The fact remains, however, that the mother has been uncooperative with services and does not have a positive and stable support system.

We also made the following specific findings in our Permanency Review Order of October 7, 2014:

• Appropriate services were recommended consistent with the goal of reunification with the parents. Unfortunately, due to a lack of cooperation and investment in such services by the parents, and the mother's limitations relative to her intellectual functioning, reunification is not a viable and safe option. Thus, the goal is changed herein to adoption. ¶ 4(a), p. 2.

• The child is doing very well in his foster placement. He is beginning to bond with his foster parents, which is a concern for the Agency since they are not an adoptive resource. The Agency has identified a potential adoptive resource and visits have recently commenced. ¶ 23(c), p. 7.

• Since the child's placement shortly after birth, the Agency has offered a multitude of services to the parents, including FICS Reunification Services, New Steps Reunification

Services, Home Nursing Agency, North Star Services and a psychological evaluation by Dr. Morford. Despite these multitude of services, neither parent made any progress nor demonstrated any ability to safely parent the child. The Agency has made reasonable efforts to reunify the child with his parents. ¶ 23(d), p. 7.

• Neither parent will be able to remedy the circumstances that led to placement, nor would either parent be able to remedy such circumstances if additional services were put into place. A termination of their parental rights would best serve the needs and welfare of the child. ¶ 23(d), p. 7.

Based upon the above findings, we found that the mother had made "minimal" progress toward alleviating the circumstances which necessitated the original placement. ¶ 6(a) of Permanency Review Order of 10/7/14.

Based upon the evidence adduced during the Review Hearings, we changed the goal to adoption. At the time of our Order, the child had been in placement for 11 months, since November 8, 2013[;] however, the child has now been in placement for a period in excess of 1 year.

In a change of goal proceeding, the best interests of the child, and not the interests of the parent, must guide the trial court, and the parent's rights are secondary. *In re A.K.*, 936 A.2d 528, 532-533 (Pa. Super. 2007).

As a result of the foregoing, we found that BCCYF met its burden, by clear and convincing evidence, of establishing grounds for termination under §2511(a)(1), (a)(2), (a)(5) and (b). We believe that a termination of parental rights is in the best interest of the subject child. We also submit that the record established by clear and convincing evidence, after taking into consideration the developmental, physical and emotional needs and welfare of the subject child, that the termination of the parental rights of J.R. would best serve the needs and welfare of the child.

Trial Court Opinion, 11/19/14, at 6-8 (emphasis in original).

Indeed, there is ample, competent, clear and convincing evidence in the record to support the trial court's determination that Mother has not demonstrated any ability to remedy the circumstances which led to Child's placement, nor is there any indication that Mother could remedy such circumstances in the foreseeable future, even with continued services in place. Unlike section 2511(a)(1) and (5), section 2511(a)(2) does not have a time limitation.

In her appellate brief, Mother sets forth portions of the testimony from the hearings on June 17, 2014 and September 30, 2014, which she believes is beneficial to her case. However, we will not impose our own credibility determinations and re-weigh the evidence. Rather, we must defer to the trial judge's determination, as the factual findings are supported by the record, and the trial court's legal conclusions are not the result of an error of law or an abuse of discretion. **Adoption of S.P.**, 47 A.3d at 826-827. Hence, we conclude that the requirements of section 2511(a) have been satisfied.

After we determine that the requirements of section 2511(a) are satisfied, we next proceed to review whether the requirements of section 2511(b) are satisfied. **In re Adoption of C.L.G.**, 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*). This Court has stated that the focus in terminating parental rights under section 2511(a) is on the parent, but under section 2511(b), the focus is on the child. **Id**. at 1008.

- 13 -

In reviewing the evidence in support of termination under section 2511(b), our Supreme Court recently stated the following:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

We have stated that, in conducting a bonding analysis, the court is not required to use expert testimony, but may rely on the testimony of social workers and caseworkers. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). This Court has observed that no bond worth preserving is formed between a child and a natural parent where the child has been in foster care for most of the child's life, and the resulting bond with the natural parent is attenuated. *In re K.Z.S.*, 946 A.2d 753, 764 (Pa. Super. 2008).

There is ample, competent, clear and convincing evidence in the certified record to support the trial court's determination that Child's foster parents currently meet all of his needs and welfare, and that Child, who has been in placement since his birth, lacks any bond with Mother. The record supports the trial court's determination that the termination of Mother's

parental rights would serve Child's best interests, and that there is no bond to sever between Child and Mother.

Mother argues that BCCYF did not make reasonable efforts to reunify Mother with Child because she did not receive the intensity or duration of services recommended by Dr. Morford. Mother's Brief at 21, 29. She also contends that the termination of her parental rights was premature because Child had not been in care for fifteen of the most recent twenty-two months, and was less than one year old. *Id*. Our Supreme Court recently rejected the argument that the provision of reasonable efforts by the county children's services agency is a factor in termination of the parental rights of a parent to a child. *See In the Interest of: D.C.D., a Minor*, 105 A.3d 662, 673-674, 676 (Pa. 2014) (rejecting the suggestion that an agency must provide reasonable efforts to enable a parent to reunify with a child prior to the termination of parental rights and that section 2511 of the Adoption Act should be read in conjunction with section 6351(f)(9)(iii) of the Juvenile Act). Thus, based upon our Supreme Court's holding in *Interest of: D.C.D., a Minor*, we discern no merit to Mother's argument that Child had not been in placement for fifteen of the preceding twenty-two months. Accordingly, we affirm the trial court's decree terminating Mother's parental rights to Child pursuant to 42 Pa.C.S. § 2511(a)(2) and (b), and changing Child's permanency goal to adoption pursuant to section 6351 of the Juvenile Act.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  4/23/2015